Mr. Nelson, nice job. Thank you. Can the court hear me okay now if I talk like this? Yes. Okay, thank you. So starting with the jury selection issue, your honors, if I could, I'd like to start with a couple of procedural matters. The first one being the government's allegation of waiver. And I'd like to be really as clear as I can up front. We are not challenging the hardship excusals. We've cited the Callaway case. No, we can't challenge the hardships. It was never our intention to challenge the hardships. We're not challenging the hardships. Our complaint and our constitutional challenge relates to four cause strikes. Just to be clear, my understanding is that you're also not challenging the fact that these proceedings were going to go forward on the jury. Questionnaires and not, or at least initially, and you were going to do some number of for a cause challenges on the on the papers. To clarify your honor, it was never the defense's understanding or expectation or agreement that any four cause challenges would happen on the papers alone in chambers without the participation of the parties outside. Well, I understand that. But with the participation of the parties, you did agree to that. I mean, it has to do with the public trial and presence issues. In other words, you did agree, at least that with the participation of the parties, the four cause challenges could go forward on the papers. Some of them. Yeah, that was not the case. Yes. Okay. Go ahead. Hey, so can I ask a clarifying question? Were you given at the time, all of the district courts questionnaires and with the rulings noted on them with an opportunity to file an objection and where in the record is it clearly stated what happened with that? So what happened, your honor, is that the district judge did an initial winnowing of approximately 400 questionnaires. And then the district court never gave those questionnaires to the parties and instead gave the remaining questionnaires on a disk, essentially off the record. And when the district court delivered those disks to the parties, the court said, hey, I also struck 400 people, some of them for hardship, some of them for cause, and some of them for a combination. And so what you see at the pre-trial conference was trial counsel for Mr. Eber then saying, excuse me, judge, could you please tell us why you struck people for cause? What was your reason for that? And that's when the district court for the first time explained, well, some people had hardships and some people said they were really anti-defense, and so I struck them. And some of them were a combination of hardship and cause, and that's what happened. So the questionnaires that you now have in front of you, your honors, in the further excerpts of record, we had a long process during the course of the appeal, asking the district court for us to have access to those, reviewing them, and getting permission to put an ETF filing card on them so we could give them to the smaller parties. I understand that you were given those at the time. That's not true. I understand that you were given those, the struck questionnaires or had access to them at the time, at the time being not beforehand, but when she told you that she had done this. No, those are not part of the questionnaires that were delivered to the parties. When did you have access to them? I'm sorry? Did she say you can see them if you want to? She did not. I'm sorry, Judge Cole, did you have a question? When did you exactly get them and where in the record does it spell out exactly how they came to you and when? Is that in post-judgment filings? Where is that? Yes. As part of our preparation of the appeal, we asked for permission to see them and to file them with ETF headers on the ETF system. And initially, the district court said no, there are too many, I'm not going to do that, and they're under seal anyway. But what the court did allow us to do was look at them and review them ourselves and make photocopies. And it was out of that review that we have been provided you with the further access to records. Now, you asked at the time, you know, contemporaneously when the district court revealed this, to have them preserved. Did you ask at that time to have them produced? I do not recall at that time anybody asking to produce them, no. But bear in mind, Your Honor, at that time, the strikes had already happened. They were long since done. It happened, but it does seem to me that there could have been, by not proceeding at that point to challenge the process, or to ask to see the documents and challenge individual cause determinations, you essentially precluded a fix. I mean, a fix could have been to start over again with a new jury array. But by letting it go by, the net result was, it became an issue for overturning the conviction rather than something that could have been fixed in a sense. I'm not sure how it could have been fixed, Joan. I mean, for one, under Mancina's florals in Rule 51, it's clear that there's no obligation on the part of the defense to make an exception to a rule if it's already happened. And I think, you know, with the perspective of what you're describing, let's go back and fix the rule. Now I have trouble hearing you. So, as I have to sit close, you need to sit close. I'll do that. The rules provide, Your Honor, and we cited Mancina's florals case, there's no requirement to take an exception to a ruling that has already happened. And by the time that the defense learned, and frankly, even the government learned, as far as I'm aware, that this caused great pain. But you see, in a sense, it hadn't already happened, because it was fixable. I don't, I'm not sure I agree, Your Honor. The jurors had been excused. They were gone. Those jurors, that jury pool had been shaped already. Right, but there was another jury pool. Oh, in terms of objecting and asking for a mistrial or something like that, Your Honor? It wasn't a mistrial. A trial hadn't started. I mean, at that point, the public trial right had been violated. The public trial, the right to counsel had been violated. The violations had occurred. And, and, and, under Mancina's florals, taking an exception is not, is just not required by the court. And the rest of the questionnaires at that point, and they have been given to you, and then you could have reviewed all of them and said, well, now, I'm not going to challenge the exclusion of these four cause ones. But these seem questionable, and I think these people need to be brought in, which was the process I think you envisioned. Why wouldn't that have remedied the problem and prevented there from being any violation? Well, again, the, the, the, the trial is just about to begin. I mean, they're on the eve of trial, and the violation had already happened. So, I guess, I mean, in theory, it was an empty exploit. It's a review in chambers, and it's, say it had been tentative, and then says, well, here's what it is. That was the process envisioned, that she might have a tentative conclusion, they'd be discussed. I'm not sure that I see the constitutional difference between that and making the rulings, but then you could have said, well, now I've got to see them, and then object to them. And, and that's in the sense in which it would have been fixable. And I don't see that that process, if it had played out, would have been really different from the tentative ruling, and here's what it is that was envisioned. I'm not sure that there was a tentative ruling, Your Honor. I mean… No, I'm not saying it was tentative. I'm saying that that's what was envisioned, is that she was going to share the ones that, that there would be issues, and counsel would have input. She went ahead and made the rulings. I understand that. But an objection at the point that said, I need to see them now, would have cured that, and made it more like the tentative process that had been envisioned, and everything could have been fixed before the trial began. But I can tell you, Your Honor, that under Mancinius Flores, it speaks to this exact issue, this impulse to say, well, it could have been fixed. Mancinius Flores explicitly addressed that and said, you know what? The defense lawyer might have advocated strongly for her client, how she dealt with it, but it's not required by the rules, and we're not going to require her to have done something that the rules didn't require her to do next. But wasn't there another problem, too, which is, I assume these people had actually been notified that they were dismissed. Do we know that? They were dismissed. They were gone. Therefore, they were no longer under the edict that they've been shown not to discuss the case and so on, right? Absolutely. They were gone. They were excused. Right. So that's what I was going to ask, counsel. To Judge Collins' question, and I genuinely don't know, but what he's doing is he's comparing – Judge Collins' question, I think, was comparing it to the process it sounds like you envisioned, and whether or not if you'd objected right away, and in this counterfactual situation been able to get these documents right away, the questionnaires, and reviewed them and said, here's the 20 that we think you didn't – we disagree with you on. As a practical matter, could the judge at that point, given what she did in real life, could she have called in those 20? Or I think to Judge Prezant's question, I mean, are they already dismissed, or what happened at that point? Yeah. My understanding is they were dismissed. But let's be clear. Dismissed, they were never – unlike regular jury pool, they were never called, right, to the courthouse. So what does it mean that they were dismissed? Like, were they actually given notice that you're no longer in the jury pool? They had been informed by the jury clerk that they were released from their jury service in connection with this matter. Some of them were excused for good, off the wheel, until their next cycle, and some of them were deferred, but they had been released from jury service on this matter, from those and from all the rest. That's my understanding, Your Honor. Do you want to give us your legal arguments with regard to the jury issue? Very quickly, and if I could tip it to the officer employee. Can I just ask one more question on this issue, just following up? If it wasn't fixable in the sense that they had been released, then what would have been the remedy? I mean, certainly the remedy would not have been you wouldn't have had a trial. Would you then have had to start the whole new veneer, or what would the remedy have been at that point? With an objection to the violation in real time? I guess I would have had to strike the jury pool and reconstitute it. A new veneer? A new round of questionnaires? Absolutely, Your Honor, because that jury pool has then been improperly shaped by the district court with these constitutional violations, so the remedy would have to be strike the jury pool and declare a mistrial and start all over again. Do you think a trial had begun? No. Oh, yes, the trial had begun. From a constitutional, that's the premise of the claim, Your Honor. Wardeer had begun from a constitutional perspective when the district court started making substantive forecaused strikes based on the fact that it's taped. That's what we know for Bordallo, that's what we know for Graves. Well, I understand that that is, I think because it's called a critical phase, that means the jury has started, the trial started, for example, for double jeopardy purposes? It doesn't seem like a trial started. I mean, proceedings started, but like a suppression hearing or something. I understand. Well, it's different than double jeopardy. Double jeopardy is when the jury is in panel. But for purposes of the public trial right, the right to counsel, and the right to be present, the trial starts when Bordallo is. Well, something started that you have to be present in. I understand that. Exactly, exactly. And I'd like to touch on officer-employee, so I'll make my statement. Counsel, I know your time's running out, but I got one more question about that. One thing that I kind of struggle with on this is sort of, I don't really see where you've shown us in any of these questionnaires that it actually prejudiced you. So that's the other question, is that it actually, like, where's the questionnaires where you're like, wow, the judge clearly shouldn't have struck this person for cause. We would have disagreed with this one. Okay. As a background legal principle, structural error on right to a public trial and right to counsel don't have any inquiry into that whatsoever, Your Honor. All right. I'd like to follow up. That seems to me to be critical here. I mean, I think you're on fairly good ground with regard to the notion that because these were case-specific and for a cause that there was, that the various rights came in. But with regard to the public trial right, didn't you agree to not do the same public trial? A public trial. In other words, you agreed that this should be done in chambers with the lawyers and judge. No? No. Only as to the hardships, Your Honor. And if you look at the excerpts of record, and including the supplemental excerpts of record, which we've asked the court to strike, and our voice is still pending, there's nothing in the record that ever has evinced an agreement by anybody, I believe including the government, to do four cause strikes off the record. I didn't say off the record, but not in public. Right. No, nothing. Only in the hardship. In other words, the idea was that you were going to go into the courtroom and she was going to sit there with a piece of paper and you were going to sit there with your pieces of paper and you were going to talk about strikes that nobody could see with people nobody could see. Was that the idea? That's what happened. For the people who the district court didn't strike in chambers, that's what happened. The parties submitted a briefing, and then they got together in court, and then there wasn't a briefing. Anyway, they came together in court and they said, we still haven't struck a case. I'm sorry? So your first answer was that this is structural error, and it doesn't have to show harm. Is that the only answer? I'm just making sure I get your full answer. No. And then when we get to the right to be present, which is not structural, the government has the burden beyond the business to prove it harmless beyond a reasonable doubt. So that really burdened on them. But I would also, to respond to whatever they would say, I would point the court to further actions to record 42. That's a juror who has dismissed just familiarity with the case. No bias, no partiality, nothing. He didn't say, I know about the Mountain View Refuge case, which is true for everybody in Oregon at that time. So if you look at Judge Brown's writing, she said, excuse due to familiarity. She's not the official to AJP, AJ Brown. And that was just a guy who said, he was a person who said, I'm familiar with the Mountain View Refuge occupation. That's it. So yeah, that person could have been discussed in court. If there was a problem, it could have been potentially debilitated. I don't see any basis to strike that juror based on the questionnaire at all. And if I could just steal a couple of seconds from Mr. Barrister and pivot really quickly to the Office of Employee Issue Owners. This is a fairly straightforward analysis. Number one, the statute doesn't say employees. It only says officers and offices. Number two, we have a Supreme Court case law, a long line of it. And yes, Congress can qualify that in the statute. If it wants the officer to mean something else, it can do that. That's what happened in Steele. That's what happened in Handy. But there has to be other language in the statute that actually does it. So in Handy, it was, you know, it said officer of the Navy. We don't have anything like that in 372. So the default presumption for that long line of Supreme Court authority says, this statute doesn't mean employee. We also know that because the word employee pops up all throughout the federal criminal code. It pops up in 11. It pops up in 1114. It pops up in 872. First of all, the statute doesn't say officer. It says holding any office, right? Trust or place of confidence. Jermaine speaks to that issue too, Your Honor. Jermaine specifically held at 510 that this concept applies to the word office as well. What about trust or place of confidence? I'll be honest. I don't know what those mean. I don't think they're legal terms of art. That, Your Honor, is something that hasn't been briefed, and I'd be happy to submit a supplemental briefing on it if the court would like. But basically, the statutory analysis, I would say no. The statutory analysis here is straightforward. The word employee doesn't exist. It exists all throughout the federal criminal code, except in this statute. But office of profit or trust, that's the language that seems to potentially go beyond constitutional officer in the appointments clause sense. And it is a peculiar phrase, but it does. I mean, the phrase here in this statute is any office, trust, or place of confidence. And the appointments clause phrase is any office of profit or trust, so it really does suggest that maybe that's the appropriate analogy. Before I steal too much time from Mr. Merritt to answer that question, Your Honor, I would say that if that is construed to mean employee, I would say that it's unconstitutionally based. Nobody could know that place of trust or confidence would refer to a run-of-the-mill employee of the federal government. And so I don't think that should be, and frankly, Is there any significance that the language is the same as in 1985, 42 U.S.C. 1985? It also says office, trust, or place of confidence. 1985. Yes. 42 U.S.C. 1985, part of the Civil Rights Act, post-Civil War Civil Rights Act. And it has always been understood to mean, well, never, an employee. That I don't know, Your Honor, and I'd be happy to take a look at that. The Civil Rights Act? As a matter of fact, it's from about the same time period. It runs up against the germane presumption, Your Honor. And, you know, what we have in this case is that typically the qualifying language, if it's going to take it outside of the Constitution, needs to really be in the statute itself, which doesn't happen. I think that if you want to let your colleague talk, we should let him talk. Thank you, Your Honor. Fair action. Good morning. Jake Ryan and Dwayne Emert were denied the right to have their cases decided by a jury of their peers for each of the convictions that they sustained. It was denied directly in the case of the misdemeanor convictions, and it was denied indirectly in the case of their only felony convictions when the court refused to instruct the jury on the defendant's theory of their default. The right to have a jury instructed on your theory of defense is foundational to our adversarial system of justice, and that's why this court has repeatedly held that a defendant is entitled to have that instruction whenever two conditions are met. First, that it's a correct statement of the law, and second, that there's some evidence to support it. It was a correct statement of the law. Neither the government nor the district court appears to argue or to ever— I'm sorry, what instruction are we talking about? Are we talking about a threat instruction? A threat instruction? A self-defense instruction, Your Honor. Oh, self-defense. All right. Am I coming through, or do I need to be closer? No, you're coming through. You just didn't say what instruction you were talking about. Okay. So, neither the government nor the district court ever appeared to seriously contemplate that self-defense can never be a defense to a charge of depredation. And the Eighth Circuit is the only court that I'm aware of that has addressed the question directly. That was in the Wisecarver case, but there the Eighth Circuit reversed the district court for failing to instruct on self-defense when that was the defendant's— I thought that what the district court said was that self-defense requires immediacy, and there was no—whatever there was, there was certainly no immediacy. That the digging of the ditch took quite a long while, and that there was no immediate threat that it was responding to in any of those points, and therefore, there were no facts that would support it. Ultimately, yes, that is what the district court ended up basing its ruling on. And in doing so, the district court advocated the role of the jury. That was a factual question that the jury was entitled to decide, not the district court. But you don't dig a ditch immediately, no matter what. I mean, this ditch was certainly mapped out in a split second, or even in a minute, or even in five minutes, or ten minutes, or an hour. While that's true, Your Honor, the imminence of the threat is the threshold—is the only temporal consideration that this court has identified in whether or not a self-defense instruction is allowed under the case. And so the defendant's belief that the threat was imminent is the end of the question in terms of whether or not they were entitled to get the instruction. Well, wait, that certainly isn't true. It's a reasonableness standard, no? The general self-defense standard is an objective standard. It isn't what the defendants subjectively believe. It's an objective standard based on the subjective position that the defendants are in. And so you can't—you don't take a, you know, a sort of clairvoyant, 20-20 hindsight view of whether or not their actions were reasonable. You have to place the—the fact finder has to be placed in the position of the defendants at the time. And so there are subjective elements that come into this. And certainly, you know, to be perfectly candid, there's good arguments that the government could have made to a jury in order to argue against self-defense. And that's what I'm saying the problem is here, is that line was drawn where the court took away the jury's ability to decide that question. And that was the only defense that defendants ever intended to present. So you took away not just—and it's not just an instruction, it's the defendants' entire theory of defense. May I suggest, since you have four minutes left, and I'm willing to give you the whole four minutes and give you some rebuttal time, but I'd like to hear it. I'm sorry, you cut off at the end. I would like to hear the argument about the jury trial and the misdemeanor, and you have four minutes left. I'll give you the whole four minutes and I'll give you some rebuttal time. But I'd like to hear that argument. Thank you. Thank you. Thank you. The government's argument has always been, in terms of the misdemeanor, whether we get a jury trial or not, that they did not—that they charged a class B misdemeanor. There is no class B misdemeanor charged in this case, but they charged with a knowing violation of a specific regulation. A knowing violation of that regulation is a class A misdemeanor. Therefore— In relation to the fact that the charging document cites underneath—in the authority underneath the heading, it cites 460-K-3, and then when it says at the end of the charge, it says all in violation of this regulation, and then says 460-K-3, a class B misdemeanor. So we're supposed to read that out of it because they used the word knowingly? Yes, Your Honor. And say that they charged another statute that's not even mentioned? That's right. Maybe this was a defective charging document, but how does it cite the other statute or rely on the other statute? The statute that they rely on does not apply to the case of Barr. It is—it's a—it's a wrongful cite, but this Court's precedent has always firmly held that that is not a basis to strike the charging instrument. If they didn't have the word knowingly, would it have been a proper charge? Would this have been a proper statute to invoke in this context to these facts? No. So it's not the word knowingly. Is it some other issue? What is the issue, then? That statute does not apply to wildlife refuges. It applies to a body of regulations—I forget off the top of my head, but it was a different body of federal properties, not— But the statute that you say does apply has two subsections, one of which is—doesn't have the knowingly and does—and is a class B misdemeanor, right? That's correct. So why—I mean, once—at what point did it become clear that they were operating under a statute that doesn't—they contended they were operating under a statute that doesn't require knowingly? I'm sorry, that question didn't come through clearly. At what point did it become—did the government say, well, we said knowingly, but we really don't need to prove knowingly? After the conclusion of the evidence in the misdemeanor court trial, they argued in closing argument when the district court was questioning whether they had submitted any evidence to support that these crimes were committed knowingly, the government took the position for the first time that they didn't, in fact, have to prove that. But was there a discussion earlier about whether a jury trial should be had or not? Yes, there was extensive briefing from—the way that this played out was that when the government charged the complaint, the parties jointly submitted jury instructions based on the misdemeanor charges. And then the court, in a status conference, questioned whether we were entitled to jury trials on those charges and whether or not they were petty offenses and instructed the parties to brief the issue. There were two rounds of briefing, one in the form of a joint brief and one in the form of adversarial briefs, addressing the question of whether these were petty misdemeanors or misdemeanors entitling us to a jury trial. Is it clear—I want to clarify this point because I think it's important—is it clear whether or not 460K and K-3 apply within a National Wildlife Refuge even if there hasn't been a National Conservation and Recreation Area designation? Does it still have some force and some role to play in that context? I don't believe so, Your Honor. The language of the government used in charging these misdemeanor offenses came from a different regulatory section that was authorized through a different statute. And so there's just no— I mean, these regulations, when they were promulgated, the source of authority lists both statutes. So obviously there's going to be context in which this regulation can apply under both statutes. You claim that it doesn't, in fact, apply here under the 460K at Sequentia, and I'm trying to understand your argument why. Our argument why is that the 460K statutory authority is limited to those National Conservation Areas, and this is simply not a National Conservation Area. It's a wildlife refuge, and there is a clear line of authority between the statutes related to wildlife refuges, the regulations governing behavioral wildlife refuges, and it's worth noting that what we're dealing with here is still the criminal law, and the potential defendants are entitled to notice. Counsel, can I—earlier you said, and I hadn't noted this before, but earlier you said that the judge—I think you said at the end of the government's presentation of the case in chief or something—said, well, what about—I don't think I've heard any evidence of knowing. Those two things don't make sense to me. Yeah. The court's ultimate conclusions of fact and judgment was reduced in written form. I can't remember the exact time, but it was sometime after the actual in-person presentation in court, and so the court asked for argument after the presentation of evidence, which was while the jury was deliberating on the felony charges, and that oral argument is when this exchange occurred. And later on when the court reduced its findings and conclusions to writing, that's basically the conclusion that the district court came to is that—made alternative findings in order to say, you know, I think there's enough here for knowing, but even if there's not, I alternatively find negligence. But in general, it is not unusual for information or indictment to have superfluous language, which isn't required under the governing statute. And even if the governing statute is what you say it is, there's still a subsection that doesn't require knowing, and it is a class B misdemeanor. They said they were alleging class B misdemeanor. And so unless you can show some prejudice in the bench trial from the fact that maybe you thought you had—that they had to prove knowingly, but they really didn't, what else is the problem? Well, Your Honor, I think you have to read one or the other section out of the charging instrument in order to make sense of this. Well, no, you don't, because as I said, it is not unusual to have superfluous language in an information or indictment, right? In other words, the fact that they called it—said knowingly doesn't mean that they really had to prove knowingly if the statute they were relying on didn't require it. Is that true? Is that much true in general? In general, yes, you can have an indictment with superfluous language. I'd be surprised to see an indictment or a charging instrument with superfluous language related to a mental state that the defendant must have, particularly when that mental state is the determining factor of what degree of crime is being charged. They told you what degree of crime is being charged, a class B misdemeanor. They were very clear about that. Well, I disagree, Your Honor, and the reason is that, again, you have to read out one or the other. You either have to read out knowingly or you have to read out the statutory citation there. And with the choice of those two things, you read out the statutory citation, not the knowingly. All right. Your time is way over. Thank you very much for your argument. We'll give at least five minutes. Thank you. So who is proceeding next? Mr. Barrow, do you want to tell us how you're dividing time? Yes, Your Honor, I will be handling the bulk of the argument. My colleague, Amy Potter, is available if, by chance, the court has any questions about the sealed materials. I'm somewhat familiar with those, but there are aspects of that that I don't have access to. So I will begin and we reserve five minutes if the court has questions about those sealed matters. Again, may it please the Court, Jeffrey Barrow on behalf of the United States. The jury selection process in this case was anything but secretive. It was a process that began right at the beginning with the judge soliciting the party's input on how to select a jury for a case that was very unusual. This is a matter that generated a ton of publicity. It involved a large number of defendants who sought to go to trial very quickly. And eventually, one of the things that the defendants asked for was to summon the jury from the entire state of Oregon. That is not normally how we summon our jury panels. And the judge accommodated that. I understand all that, but did she ever notify the parties before she did it that she was going to exercise or cause child challenges without the party's participation? I believe she did, Your Honor. First of all, obviously, just by way of background, in Trial 1, there was a bifurcated process whereby jurors could request to be excused before answering a questionnaire. In Trial 2, and the parties were, of course, familiar that that's what was going to happen in Trial 1. All parties were familiar with that. In Trial 2, the court expressed concern that there wasn't enough time for the bifurcated process. In other words, there wasn't enough time to send out a request. Well, I know all that. And not having enough time is not a reason to have a constitutional violation if there was one. So that's not very helpful. I mean, I do think the question I asked you is the key one. At any point before they set up a process, we were told, and I think it's consistent with her, that the understanding was that she was going to exercise hardship and qualification dismissals as the clerk's duty. But she was doing that here because it was a high-profile case. She never said that I know of that I'm going to exercise case-specific or cause-based bias. Well, does she ever say that? Well, again, I think it's important to remember that we're not talking about a traditional cause based on bias. All of the strikes we're talking about here are jurors saying, excuse me from this jury. I cannot be on this jury. Perhaps I can't be on the jury because of a hardship. Perhaps I can't be on the jury because I'm telling the court I cannot be a fair juror. So these were all instances in which the juror asked to be dismissed? Yes, Your Honor. That's my understanding. Do we know that? Well, every example in the defendant's FER involves a juror asking to be excused. Well, now she said, the district judge said in the Rule 10A hearing, assuming we can consider that, that she hadn't done anything that the jury commissioner wouldn't have done. Is it appropriate and typical in Oregon for the court of the jury commission to remove people from a jury veneer based on for-cause determinations? Is that regular practice in Oregon? So what the record shows is that the jury, the local plan for jury selection would permit the clerk, actually I believe the court under 1866C, to excuse a juror based on- For-cause statutes reserved to the court. There's no mention that the clerk can do that. And I didn't see that in the plan. So I was puzzled by the comment that the court perceived that it acted in accordance with what the clerk would do, because that didn't seem correct to me. I guess, to be frank, I'm not entirely sure. Let's break it down in two things. I think that the clerk could excuse a juror that asked to be excused. Now, it wouldn't ordinarily be the case, including, I would assume, a juror that was asking to be excused for hardship. What may be different in this case than the ordinary case is that the questionnaires were given to the jurors, so jurors had some fact-specific information. But I can't imagine that a juror that contacted the clerk's office- That makes the selection process here on paper, it indicates the same kind of consensus for Bardolo, where the jurors know the case that they're being summoned for. And so, you know, the notion that you could be doing for-cause evaluations, either at the clerk level or in chambers, does not seem to have any support. Well, I think Bardolo and Reyes are critical. And if you forgive me, if we look carefully at what happened in Bardolo, it doesn't tell us when voir dire begins. What Bardolo really says is that what happened in that particular case, which is that a judge questioned jurors in the courthouse who actually knew which case they would be deciding. And I think if you look at Bardolo, the significant problem we have in Bardolo is that there is a murky record at best as to what happened. The opinion notes that it's not even clear who was there. Clearly, the defendant was not there, but it's not clear whether the government was present. And it doesn't seem to be clear what questions were asked. It's just clear that jurors were dismissed based on specific relationships with Bardolo. I think Reyes is a much more useful case for deciding what happened there. Here, clearly, we're in-person questioning. There are 17 jurors who are questioned at sidebar after voir dire has begun. And there's one that is actually – I'm sorry. One juror is questioned at detail about the case at sidebar. There are 17 examples where there's a bench conference where they talk about whether the jurors should be dismissed, including for hardship or bias. And because there's no in-person questioning in those 17 examples, that is not voir dire. It's a legal determination about whether the jurors should be dismissed, and the defendant has no right to be there for that. But significantly, unlike Bardolo – May I clarify? So you are contesting the notion. Your brief was a little sparsely. So I just want to be clear that – I'm sorry, Your Honor. I didn't hear the question. I want to make clear that your position is that there was no constitutional violation in the way that this process went forward, even though it was a case-specific questionnaire and case-specific cause, essentially. Correct. And the reason for that is because the defendant had the knowledge of the questions that were being asked, had access to the answers, and I would differ with my colleague. The record suggests that all of the questionnaires, they weren't handed to us. In other words, the court didn't distribute the 430 that were dismissed, but they were in the clerk's office and available to the jury. Suppose they had asked for them on the spot, and she said, no, you can't have them. They've gone already. Would there be a constitutional – would your answer be the same? Would there be a constitutional violation? I think that would be a problem. It would certainly violate the Jury Selection Act, and it would be a very different issue. But the reality is that they had access to these questionnaires. Or they could have – I mean, they would have objected at that point, which – You're conceding that she shouldn't have been doing this on her own in chambers with no one's input. That if that's true, then that would have been problematic. Then she shouldn't have been doing this in the first place. No, I think it's fine as long as the defendants have the ability to examine what the record says about which jurors were dismissed. But they were already – the people were already dismissed. We talked about this before. Do we know that? Were they already notified of their dismissal? The record is not – there is nothing in the record about whether they were notified. I will concede that what the judge said is she has dismissed the jurors. But I would note, I think they could be recalled. If there were jurors in that pool that the defendant wanted to rehabilitate for some reason, I see no reason why the clerk's office couldn't have called those jurors and said you need to come in in person. They wouldn't have been exposed to something that would have tainted them in some way. I mean, what would they have talked about? They would have said I was summoned for jury duty. I asked to be excused. The judge granted my excusal. I don't think they'd be tainted in any way. At an extreme level, a new panel could have been sworn. I just don't see why, with two weeks to go, there was no remedy. And I think, you know, defense rely on the misdemeanor's floors case. That factually is very, very different. That's a case in which a defendant offers their plea. And then in the middle of the plea colloquy, while a jury is waiting, presumably, on the same floor or in the courthouse, the judge refuses to accept the plea colloquy and calls the jurors. So, boom, it happens like that. Here we have at least, at a minimum, two weeks in which the error could have been rectified. Well, it sounds like there's a great deal then that rides on the question of whether, in fact, they had access to the free questionnaires at that point. And there seems to be some dispute about that. I would be helped if each of you, after argument, pointing to whatever. We'll be. For your representation as to whether there was access at that point to the jury questionnaires. Your Honor, what I would point to today, and we will follow up by a letter, but what I would point to is that, first, the law requires that those be preserved under the Jury Selection Service Act. And, second, the district court, on that date, two weeks prior to Huadir, told the parties that those records were preserved. So, I don't know why there'd be any suggestion that the defendants couldn't look at those records. Well, I think, to add to what Judge Rosado just said, I think there's two things. One is where the record's preserved, but then also sort of what had happened to this jury pool. Like, if they had been told, okay, you're done, and you're off this case, and it would be odd. Maybe you could bring them back, but that would create a weird situation for that particular juror to have been told, had been sent home, I guess, metaphorically in this case, and then to have been recalled. That would have been. So, can I ask you a question about both those things? If the record's just, if we don't have anything in the record, and there's nothing available as to what these jurors were told, whose burden is it here? How does that affect, like, you know, if on either of these issues, there ends up being a blank space in the record, how does that cut? Well, Your Honor, I think the Sixth Amendment guarantees the defendant a right to an impartial juror. So, the jurors we're talking about were all jurors that claimed, the jurors, I guess, now that are being objected to, which is clearly a smaller subset than the 430, the ones that were struck for apparent bias. Those jurors are jurors that are claiming that they cannot be fair and impartial. So, I don't think that the defendant has a right to a partial jury. They have a right to a veneer that's selected at random from a cross-section of this community, and that's what they got. They chose their pettit jury through the process of one year. Counsel, I don't feel like it's a response. Of course they don't have a right to a partial jury, but it's also true that sometimes jurors don't want to, you know, go clear across the state to go do jury service. So, I think they do have a right, typically, to sort of test whether or not if a juror is saying they're going to be partial, whether or not they really just, you know, are making it up, right? Because that happens. And so, I don't think that's really responsive. I mean, to my question of if, at the end of the day, we don't know what these jurors were told when they were, quote, unquote, dismissed, how does that cut? You just said that they have a constitutional right to an impartial jury, and if they were, you know, if we don't know how they were treated, is that something that the government has the burden on, or is it something they have the burden on? Your Honor, if the question is who bears the burden of establishing this harmless error, we would assume that we've established this harmless error. In other words, going back to what I said, the tenant jury has been picked from a fair veneer. Okay. Let me make sure you're clear what I said. So, at the end of the day, we're saying, there's some sort of error seemed to have happened here, the way this, and your response seems to me to be twofold. Well, they could have, if they wanted to, they could have talked to these folks, but that turns on two things. The availability of these documents, and whether that's good enough, I guess, that they were just available, notwithstanding the fact that the court had already basically divorced and left the barn in a sense. But then the second thing, which I'm getting at here, is what had the jurors that had been dismissed been told? And so, again, you're saying, you're acknowledging that it's your burden to prove that that would have been harmless, because you're saying, you're saying they could have done all this stuff, but obviously if the jurors had been told, don't you ever come back? You know, and you can think of a situation where they wouldn't have been harmless. They couldn't have brought the jurors back. I don't think the record shows what exactly they were told, but I don't think it's true that if a clerk of a court of a district court calls a potential juror and says, your request to be excused from this panel has been granted. I don't know why that same clerk couldn't return the phone call to that juror and say, unfortunately, you have to come in. There's just, that doesn't strike me as common as a problem. And there was a juror is going to respond to a district court telling them that they need to come into the courthouse. Could you tell me again why you think Bordallo doesn't fall here as to the propriety of the process? Well, I think Bordallo does. It's very important to the court's analysis. What I'm saying is that they didn't decide whether voir dire had begun in that instance. What they said was that what happened in that case, which was in-person questioning by a judge of jurors, was closer to voir dire than an administrative screening process. And I think the reason it's so problematic is as the opinion alludes to the fact that the record was extremely murky. So you don't know what happened. Not to mention the fact that presence is critical. As Reyes discusses, the fact that a juror is questioned in-person is something very different than a paper rock record. But if Reyes counseled, they're at the sidebar, right? I mean, so that's not really the right analogy here, because one of the critical issues is the absence of counsel input. I'm sorry, Your Honor. It's true that in Reyes they're talking about sidebar exchanges, but I do think Reyes is focused on the fact that the defendant not being at the sidebar didn't have the opportunity to pick up on those visual cues. But the defense counsel was there at the sidebar and was able to fully participate. Yes, Your Honor. In a very real sense, the defense counsel was present here. Again, they formulated the questions with the input of the court, and they had access to the answers. But that's a turn again, yes, on whether they had access to the answers. I mean, every row seems to be leading to the same question, which nobody seems definitive. It seems to be a basic disagreement of that, because it would seem to me that if they had access, there wasn't a complete absence of attorneys during the process as a whole, and then there would not be a chronic application. And the defense counsel was there. Supposedly, we're looking at that. It was some suggestion made. Judge Berzo? What? You're cutting in and out. I'm catching like every day. Oh, I'm sorry. All right. Okay. It's very odd. It seems to me. It would seem to me that there would be a harmless error, even a constitutional harmless error analysis, and there seems to be some disagreement as well about what we know about those jury, but the decisions that were made would be harmless error. There was at least one suggestion made that there might be some of these questions that would have been challenged if they could have challenged them. So the access question just seems to be critically important. Your Honor, I agree, and I guess I think the access question is answered by the court, the district court, in February, telling the defendants that the questionnaires were available. I don't know what she would have meant by that other than to say, if you want to look at these and you want to challenge this. She said they were available. She said they were preserved. I'll have to follow up with the court for the exact language of the transcript site for you on that, Your Honor. I don't know what exactly she said, but I think the implication was if you want to look at these, you want to take this up, they're right downstairs. So that's the right to cancel. The presence issue is subject to harmless error. Correct, Your Honor. The other possible structural error is public trial. Your Honor, I think that effectively this was public. In other words, when she comes back to the open court and says 430 jurors have been dismissed and explains a variety of reasons why they've been dismissed, I think that's functionally the equivalent of a public trial. I mean, what would have been observed that wasn't observed in that instance? Would it have been the judge reading the questionnaires and making notations on the request to be excused? I don't know. I think the public trial was clearly available for this procedure. What happened with the granting of jurors' request, again, the granting of jurors' request to be excused from this veneer was trivial in the context of a voir dire that was fully conducted in open court on the record, a trial that of course occurred on the public record. So it's a public trial. Is there anything else you want to talk about? Just fairly briefly. Let me just say one thing. The other side had about five minutes extra, so we'll give you five minutes. Thank you, Your Honor. On the question of an officer of the United States, I think the parties agree generally on what the relevant cases are. I, of course, would point the court to the Steele case, which defendants also referenced, and specifically says that a broader definition of officer of the court is appropriate. It's in the context of the statute. The context of this statute is very important. Its original enactment in 1861 is one thing. We've talked about what the proponent of that statute, Senator Trumbull, talked about in the parties brief. But more important than that is when the 14th Amendment is ratified in July of 1868, Section 2, or Section 5, says that Congress shall have the authority to enact laws to enforce this, to enact legislation to enforce the 14th Amendment. And that's exactly what this original statute is. In 1871, it's passed, and it is called an Act to Enforce Provisions of the 14th Amendment. It's also informally known as the Ku Klux Klan Act. And so as we know, at that time, the Ku Klux Klan was terrorizing African Americans and Republicans in the  And it has extremely broad context. So was this part of the same statute that 1995 was part of? I believe it is, Your Honor. And I want to double check that, but it's definitely part of the civil rights. Its purpose is apparent. But the connection to 1985, I believe it is, but I want to confirm that. The language is exactly the same. Exactly, Your Honor. And if you look at the other part of what's criminalized by that statute, it criminalizes conspiracies to oppose by force the government of the United States, to interfere with jurors and witnesses. It even criminalizes the conspiracy to interfere with state authorities who are securing the equal protection of the laws. So the bottom line is the breadth of that statute is apparent from the context. One candidate sets for construction the purpose rule. A statute should be interpreted to best carry out its purpose. And in this case, it clearly had a broad purpose. The last one, I can't cite a candidate's statute of construction, but the common sense rule would say that a 150-year-old statute enacted in 1869, it's been applied to people that don't fit the narrow definition of the United States that defendants urge us to use, including cases from the 1880s right up until modern times. As for the misdemeanor issue, the statute in this case charges Class B misdemeanors. Can I ask you to address the statutory authority question? I understand that the particular regulations that were the basis of the charge here were promulgated under the authority of two different statutes. What is your argument as to why the other statute, the 460K, applied in this specific factual context? They're arguing that the other statute applied was the source of the use of the regulation here. And so the fact that the authority is invoked generally doesn't mean that in this instance that is the source of the statutory authority. Tell me why you think that it is. As I read the statute, because of the parenthetical reference at subchapter C, it includes that there is no penalty provision in that section, so it refers us to these options. And the government's view is that the government had the right to be able to pick which penalty provision applied, and we did by deliberately picking a... But that's talking about the other provision. I'm talking about 460K. 460K says the secretary can do various things related to national conservation recreation areas, and there is no such national conservation recreation issue here as I understand it. So tell me why the authority in 460K is relevant to the regulatory context here. You know, I'm going to have to follow up with a letter on that specific point. My understanding is it's applicable, but I'll have to answer you by a written letter. It's not. The regulations may apply in the NCRA context, but if that's not the context here, then we're under the other statute, and then we're trying to figure out we have a facially flawed charging document that charts the wrong statute. It should have been this other statute, and now we have a conflict between, it said B attached to the other statute, but it says knowingly, which under the correct statute would put you in a one-year context. So it seems to be an important question whether or not it actually was under 460K or not. I agree. We'll follow up with a letter. The one point I'd say, though, and I think this was touched on earlier, the mere fact, putting aside the statutory issue, but the mere fact that we've said knowingly doesn't mean, doesn't change the penalty provision of the statute. And you can imagine the reverse. If the information didn't charge 688DF1, we couldn't later say we want that penalty. That would clearly not be fair. Well, but if you charge the wrong statute, and it should have been under, you know, the 658, you know, DD, if that should have been the statute and the relevant subsection says if it's knowingly, we go one way, and if it's not, it's the other, and the indictment says knowingly, it kind of sends you in the wrong direction, then, doesn't it? Perhaps, but it's been alleged as a Class D misdemeanor. Well, a Class D misdemeanor attached to the wrong statute, which is a Class D misdemeanor. That's the problem. I'm not sure once you concede, if you do, that the statute is wrong. I'm not sure that B doesn't fall away with that. I'm not prepared to concede the statute's wrong. I'm just going to have to answer your Honor's question in a written letter. More generally, does it matter whether the right statute or the wrong statute, where each statute essentially has the same provision, i.e., a non-knowingly correct? I don't know the answer to that. It doesn't matter. Your Honor, I'm sorry. I couldn't hear that question. I don't know why this is happening. More generally, would alleging the wrong statute, if the content of the right statute was the same, which in part it is, matter? I don't think it would. We don't know that either. That's another thing we don't know. All right. Very strange. And I guess just briefly to touch on the self-defense issue, I see my time is up, I believe. No, I said I was going to give you a five-minute session. Okay. I don't believe that self-defense is appropriate for a depredation charge. The only case that anyone's found on this is the Wise Carver case, and that's interesting on its facts. It's a case in which assault on an officer is charged as well as depredation, and the scenario involved a dispute between a federal officer and a landowner, and there's a confrontation, and when the defendant, Wise Carver, believes that the truck is going to run him over and he shoots the truck. And so there was a self-defense instruction there, but it's not clear to me that anyone ever thought about whether that applied to the depredation charge. I don't walk in and see why it wouldn't. I don't see why it wouldn't.  I don't know if the charge is in fact the way in which he was doing the depredation, was something he was doing to defend himself. I mean, like shooting somebody or cutting something off because it was going to, otherwise somebody was going to hit him with it or something like that. I don't see why. That seems to me to be the weakest point here. I don't know where the immediacy is. Well, I guess that is my stronger point. You know, obviously it applies when there's a reasonable belief that the use of force is necessary to defend against the immediate use of unlawful force. There's no immediacy that the trench took an extended period to dig. There was no law enforcement in the area at the time, and there was no unlawful force coming at them in any way, shape or form. So it's just factually doesn't apply to the scenario here, whether it's potential in another case. I really don't know. I don't think Wise Carver answers that, but here there, there is absolutely no immediate use of unlawful force present. Okay. Anything else you want to tell us? Your Honor, if the panel has no further questions, we'd ask that the district court. I do have one other question going back to the prior issue. What do you agree that the government and the district judge did not explain that that knowledge was not an element until after the bench trial? No, your Honor, I, here's what I think the record says on that. For the things, the trespass charges, there was really no question that it was not that we proved knowingly that wasn't that issue. The issue of the knowledge component came up when we were talking about proving, I mean, the knowingly ties into the jury trial. I mean, or at least it's argued to tie into it. So until the knowingly was declared to be really superfluous at the point, possibly had a jury trial process. I'm trying to figure out at what point that became known. At what point it became known that the government felt there was a, that knowingly wasn't required? Yes. Or that the judge said that knowingly wasn't required. More importantly, I think what Judge Brisson is getting at is at what point did the defendants know that you weren't actually going to include knowingly in, because it was in the, and it was in the charging document. So what point did they know? Because even if, even if you're correct that you didn't have to prove knowingly as a matter of law, if they didn't know that, then there may be there's a problem. I think that's what, I'm curious about that question too, because your initial answer was, we were trying to prove knowingly with regard to at least one of them, which I don't think helps much with that question. Well, here's what I recall of the record. I think initially it was, the government's position was that we did not have to prove knowingly. There was the formulation of jury instructions that the defense included that included knowingly. And it was only afterwards, again, at the point that defendants allege where we realized when discussing this issue of, of the, of the vehicles, and whether they knew the vehicles were owned by the government, that's when we reverted to our original position that knowingly wasn't, wasn't required. But for the jury trial question, it was always alleged that the class B misdemeanor, there was, there was zero question in anyone's mind that this was, that this was going to be, that the government's view was that these were class B misdemeanors. And that was fully litigated throughout the case. Thank you for your time. Thank you. Hold on, hold on. Sam, it appears that Judge Berzonski is frozen. Can you reach out or correct that? Yes. I'll see what I can do. Judge. Thank you. You back Judge Berzonski? You were frozen for a little bit. Okay. I'm back. Sorry. Okay. Great. All right. Thank you. Mr. Berzonski and I are going to try to split our rebuttal time again, and I'll try to be as fast as I can. On the jury selection issue, there's no such thing as a harmless structural error. That is by definition what we're talking about with the structural error. There's no fix. And even if the court were to consider it unpreserved for some reason, on the United States versus ratio and that line of authority, the third and fourth prongs of the plain error test are basically automatically satisfied. Anyway, when you're talking about a structural error, and we know that this is a plain structural error because Cressley found it so obvious that they decided Cressley on a GVR at the Supreme court level because the trial judge there failed to even consider an alternative to closure. That was such an obvious public trial error that the Supreme court GVR'd it. So at that, your honors makes the availability of the questionnaires and all that kind of stuff after the fact completely irrelevant in our opinion. It doesn't matter. And think about, I asked the court to please think about what you could be approving if you approve this procedure. This is a judge, a trial judge, taking conducting substantive work here, which we know is a critical stage of the trial, where we know that the right to a public trial attaches, the right to capital attaches, the right to the presidency, all attached. The judge was able to literally conduct more GVR's from chambers. Wait a minute. Just a sec. It seems to me that you have focused on each of the claim constitutional rights separately. You may have somewhat different conclusions. And as to the public trial right, that is simply that something has to go on in public, but it isn't necessarily about what has to go on. Right. So as I guess I'm asking you to respond to Mr. Barrow's point, which is that if you had something going on in public, what you'd have going on in public would be judge Brown sitting with her and looking at pieces of paper and looking at them and making marks. Why not? The deliberative process for most of the cause strikes occurred on the public record in public view in the courtroom, which was the parties and the court discussing each juror one by one and whether or not that juror was, was, was. You somehow have to then get from the public trial right to that to be in a courtroom where people can see whatever is going on. So you have to, you have to have an argument about why the public trial right not only requires that the public be there, but that something particular happens. Well, I think the deliberative process needs to happen in public. And I think the ruling has to happen in public. And we see how this particular situation. For example, to take instances where there is a bench conference, that's not the deliberative process there isn't public. People can see that there's a bench conference, but there is no requirement as I understand it, that the conference be public. There was no, there wasn't even a conference here. I understand that, but I'm just pointing out that the public trial right doesn't necessarily carry with it content. And if there is a legitimate reason not to have a public proceeding, we know from Pressley that we have to have the Waller factors satisfied. And we have no findings here whatsoever. And remember in Pressley, it was the absence of findings in and of itself that was worthy of a GBR. We have no findings here, even after the fact, we have no findings. And that's why it's all irrelevant. The structural error happened. And that was a structural error. If I could just briefly. Let me ask you one last question. Is there a cure for that structural error now? IE, could we send it back and say, okay, now do it. With the cure. Similar to the suppression hearing. On one of the other cases. If you don't have to do the whole thing over, you just do that part over. Well, no, because we're speaking a jury to try the cost. So the struggle, the remedy here is. I understand it. But if the net result was you had enough of the same rulings, then there's no problem. Well, the suppression hearing case, right? Which suppression hearing case, John? I didn't get it. There was one in which they said, you don't have to do the whole trial over. You just do the suppression hearing. I think it was a chronic case. I don't think you can. You can't. You can't cure a structural error. After the structural error occurred. By redoing whatever it is. The critical stage in which it was a problem. Well, that was the case. I mean, I'm not sure what the point of view would be, because everything was essentially contrived. By having a do over. I just don't think that's the case. And I think it's possible to give Mr. Sometimes. Sorry, what is it possible to also not tell Mr. Merrick and give him some time? One minute. Thank you. Thank you. One minute, exactly one minute. I'll stop talking in one minute. All right. I think it's judge Collins has repeatedly asked about the statutory authority. And that question is addressed on page 119 of the joint opening brief last paragraph. And it's not the first time that we've addressed it. This briefing comes from months. The trial occurred when we first argued that we were entitled to a jury trial when the court asked whether or not these were petty offenses, which would not allow us to have a jury trial. The, the, the, the. Statutory section that the government sites in its charging instrument is only applicable for one of the codes within 50 CFR and that section 404 and section 404 only relates to certain conduct from the Northwest Hawaiian Islands Marine. Yeah. But the cross reference table is not really dispositive here. If you go back to the federal register and trace the promulgation of this, it does in fact site for 60 K. Yeah. So they did invoke it. But the question is, was it applicable on these circumstances or was the source of the regulatory authority, the other authority that was involved when it was promulgated? But I think the clear weight of the authority in this case points to section six, six, eight, 80 for the reasons we lay out in our brief. And if that question is not sufficiently answered by our briefing, I would be happy to supplement that with a letter related to the national. And related to that is the questions I was asking doesn't matter if there was a mistake as to the governing statute when in fact the governing statute that you are propounding has a similar provision which doesn't require knowledge. And we know that they were alleging a class B misdemeanor. So what difference does it make actually? Well, the difference that it makes is that the government never said that they didn't have to prove knowingly and the court never said that they weren't going to have to prove knowingly. And so the defense was prepared entirely based on the idea that we were defending against a knowing violation. And if you look at the arguments. But that's an additional element. So you still have you're saying you were just going to negate knowingly and you weren't going to negate the acts, but you did try to negate the acts. With respect to some of the crimes charged, your honor, but with respect to criminal trespass, I mean, they were there. There was no disputing that they were there. And I can only say from the perspective of Jake Ryan, my client, that our argument was entirely that by the time Mr. Ryan arrived at the refuge, there was no signage to tell him that he should not be there. That means you didn't have a defense to the actual crime. So that doesn't help either. We have a defense of the crime that they charged. And they charge a different. They wasted some time, but you didn't weren't prejudiced because there's nothing you could have proven with regard to the actual crime that they plan to be charging. I'm sorry, I didn't hear that. You wasted some time, but you couldn't have defended against the charge that they maintained that they were actually charging. So it doesn't matter. You weren't prejudiced. Well, your honor, I think whenever you're faced with a criminal charging instrument, you have to prepare based on that. And that affects not just the trial, but it affects how the parties negotiate and affects the entire proceedings leading up to the trial. All right. Thank you all. This was obviously an incredibly complicated case. And you did a really helpful job of honing on the important issues and clarifying them to some degree. We all really appreciate it. So thank you all.  submitted. Thank you. Thank you.
judges: Berzon, Collins, Vandyke